## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 3:23-cr-56 (VAB) |
| | : | |
| v. | : | |
| | : | |
| DONELL ALLICK a.k.a. "D-Nice" | : | March 8, 2025 |

### GOVERNMENT'S SENTENCING MEMORANDUM[1]

The Government respectfully submits this sentencing memorandum in connection with defendant Donell Allick's sentencing hearing, currently scheduled for March 19, 2025. For the reasons detailed below, the Government asks that the Court adopt the findings of fact in the Presentence Report ("PSR"). As per the parties' plea agreement, the Government believes that any term of imprisonment in this case should be served concurrent to the defendant's 115-month sentence in Case Number 22CR222(VAB), and that a sentence of at least 264 months but no higher than the sentence given to codefendant TyJon Preston is appropriate. *See* Docket Entry Number ("Dkt. Entry No.") 285 at 5.[2]

## I.    BACKGROUND

### A.    Procedural History

On August 2, 2023, a federal grand jury returned a Superseding Indictment charging defendant Donell Allick, Jr. and eight other Exit 8 members or associates with various racketeering and narcotics offenses, including sixteen attempted murders and three murders of rival gang

---

[1] Because the defendant has not yet submitted a sentencing memorandum, the Government requests to submit additional briefing if warranted after reviewing that memorandum.

[2] In the parties' written plea agreement, the Government agreed that it would "not advocate for a term of imprisonment higher than the term of imprisonment meted out to any co-defendant in Case Number 23CR56(VAB)." *See* Dkt. Entry No. 285 at 5. Defendant Quaymar Suggs received the highest sentence thus far of 250 months of imprisonment. TyJon Preston and Donell Allick are the only two remaining defendants to be sentenced. Under the terms of Preston's binding plea agreement, the lowest possible sentence is 264 months. Accordingly, the Government is asking for a sentence of at least 264 months, but no higher than the sentence that the Court ultimately gives TyJon Preston who is scheduled for sentencing on March 18, 2025—the day before Allick.

members, from 2018 through 2023. *See* Dkt. Entry No. 80. Allick pleaded guilty to narcotics

conspiracy and the September 16, 2022 murder of Kenneth Cloud. *See* Dkt. Entry No. 285 at 5.

     **B.**     **Plea Agreement and Sentencing Guidelines Stipulation**

     As indicated above, on August 1, 2024, Allick pleaded guilty to racketeering conspiracy

with the special sentencing factor of murder (Count One). *See* Dkt Entry Nos. 285, 286. Although

the written plea agreement makes clear that it does not set forth all of the relevant facts that may be

considered by the Court, it contained the following factual stipulation:

> The parties stipulate that (1) from at least as early as 2018 until August
> 2023, Donell Allick, Jr. was associated with the racketeering
> enterprise known as the "Exit 8" gang; (2) in furtherance of the Exit 8
> enterprise, Mr. Allick conspired to traffic various controlled
> substances, including fentanyl, heroin, crack, marijuana, oxycodone,
> and Percocet pills; (3) the narcotics quantity for which the defendant
> is responsible, as a result of his role in the conspiracy, is at least 100
> kilograms but less than 400 kilograms of converted drug weight; (4)
> throughout his association with the Exit 8 enterprise, Mr. Allick
> possessed, used, traded, and sold firearms, as did members of the Exit
> 8 gang; (5) **in furtherance of the Exit 8 enterprise, Mr. Allick**
> **committed acts of violence and conspired with and aided and**
> **abetted Exit 8 members to commit acts of violence, specifically, on**
> **or about September 16, 2022, Mr. Allick shot and killed, and aided**
> **and abetted in the same, Kenneth Cloud; ( 6) the violent acts**
> **committed by the defendant, and those he agreed to have happen**
> **and/or aided and abetted, were done to retaliate on behalf of the**
> **Exit 8 enterprise against rival gang members and to raise and**
> **maintain the reputation of the Exit 8 enterprise and the**
> **defendant's association with the Exit 8 enterprise**. The defendant
> knew that acts of violence and retaliation were expected of members
> and associates of the Exit 8 enterprise.

Dkt. Entry No. 285 at 4 (emphasis added).

     The Final Presentence Report calculates a final combined adjusted offense level of 40 and

with Criminal History Category III, a Guidelines range of 360 months of imprisonment to life in

prison. PSR ¶¶ 81, 90. As indicated above, in Case Number 3:22CR00222(VAB), the Court

imposed an effective sentence of 115 months of imprisonment on the defendant following his guilty

plea to unlawful possession of firearms by a felon and the jury's return of a guilty verdict on three

drug trafficking offenses.  As indicated above, the parties agreed that any sentence imposed in this

case should be served concurrently to the effective sentence imposed in Case Number

3:22CR00222(VAB), with the understanding that the defendant will continue to serve any

remaining portion of the sentence imposed in this case after the defendant completed serving the

effective 115-month sentence imposed in Case Number 3:22CR00222(VAB).

### C.    Underlying Facts

#### 1.    Background on Exit 8

Donell Allick, Jr. was a member and associate of the New Haven street gang "Exit

8."  As this Court is well aware, this is a local street gang in New Haven named after the

geographic area accessed by exiting Interstate 91 at Exit 8 in New Haven.



In the period alleged in the superseding indictment, Exit 8 territory, and rival gang

territory, was plagued by shootings, murders, shots-fired incidents, and violent crimes.

Members of Exit 8 have had longstanding issues with other neighborhood gangs within

the city, specifically gang members from within the "Hill" (the southwestern-most

neighborhood of New Haven) and gang members from the area of New Haven known as

the "G" (an area based around a former housing complex in the Fair Haven section of

New Haven (the Farnam Courts housing complex). Violence between the groups is retaliatory in nature and the more shootings and killings members committed, the higher status they gained within the group and the more respect they obtained from other members. Gang members used social media and rap videos to promote the Exit 8 gang, proclaim their membership and association, and threaten rival gang members. They also glorified violence and posted pictures with firearms on these platforms.

### 2. Donell Allick's Association with the Exit 8 gang

The investigation revealed that Allick, like many of the other defendants, used Facebook to promote his gang affiliation. For example, on February 25, 2020, Allick, using Facebook Account "CountUp Nice," posted, "Lost [m]y Lil Woa Men That Shit ain't Sitting Right With Me [broken heart emojis] I love you lil bro (tagged Myers) Day Honcho You really Got my Head Fucked Up! [emojis, broken heart emojis]."



This post occurred just two days after the date on which Dashawn Myers, a.k.a. "Honcho," an early member of the gang, was shot and killed, and it demonstrates Allick's loyalty to Myers. Similarly, on February 28, 2020, Allick reposted a picture of a male wearing a memorial T-shirt for Myers and the message "#LongLiveHoncho (emojis)" in conjunction with emojis including the eight-ball symbol.

On March 29, 2020, Allick posted the following message: "[D]on't waste Ya Time sending Threats (emoji) We ain't Worried (emojis)" in a post targeted at opposition gang members.



On April 18, 2021, Allick posted, "Talk to Me Nice OR Don't Talk 2 Me Twice I Been In My Bagg (emojis) #FreeBlam (Emoji) #LLKAY (emoji)," in a reference to freeing Samuel Douglas ("Blam") who was incarcerated at the time.



In another example of a post on Facebook, Allick antagonized opposition gang members:



Similarly, on July 9, 2021, Allick posted "Mydawgbackbetterthanever" "Banupblamm."

These are just some examples of the dozens of enterprise related Facebook messages that

Allick posted demonstrating his membership in the group. The Government would also

have relied on witness testimony at trial to explain Allick's involvement in the gang.

### 3. Firearms Activity

There were also a number of video and posts on social media of Allick posing with

firearms and attempting to buy and sell them. The below are some examples:



| 08/11/2020 16:15:17 | 100010103442663 | Ant BeZz | Gotta bike fa sale woa hit me |
| 08/11/2020 16:15:26 | 100010103442663 | Ant BeZz | Hold 15 |
| 08/11/2020 16:16:08 | 100014330352656 | Donell ALLICK | The video chat ended. Missed [false] Duration [36] |

In these messages, "jawn" and "bike" were used to refer to firearms.



| 04/21/2020 12:19:51 | 100014330352656 | Donell ALLICK | I got you |
| Date/Time | Sender ID | Sender Name | Message |
| 04/21/2020 12:20:58 | 100046527677641 | Hari Banzz | Glocks bro I appreciate it |

| 01/02/2020 10:29:57 | 100014330352656 | Donell ALLICK | 650 |
| 01/02/2020 10:30:00 | 100002301221736 | Michael Lockhart | its a gg w a 30 |
| 01/02/2020 10:30:05 | 100014330352656 | Donell ALLICK | 650 |
| 01/02/2020 10:30:40 | 100014330352656 | Donell ALLICK | ? |
| 01/02/2020 10:32:02 | 100002301221736 | Michael Lockhart | im bouta ft you whats ya # |
| 01/02/2020 10:32:04 | 100014330352656 | Donell ALLICK | Send me ya number |

4.    **Narcotics Activity**

Like other Exit 8 gang members, Allick also used Facebook to advertise his

dealing in narcotics.  For example, on July 14, 2020, Allick posted, "All My Niggas Trap

Or Die Nigga Just Like Jeezy!!"  Investigators believe that, in this post, Allick was

indicating that he and other gang members were "trapping," or selling narcotics, and that

they saw it as the only way of life for them.



Below are some other examples:

There are dozens of similar messages relating to his conspiracy to sell narcotics.

Finally, as this Court knows, Allick also shared a drug phone with codefendant Douglas

in September and October 2022 and the Government would have introduced at trial

dozens of narcotics related messages from that telephone.  As introduced as evidence at

trial in the related 22CR222(VAB) case, Allick and Douglas were observed, through

surveillance and controlled buys, distributing fentanyl in September and October 2022,

and Allick was separately convicted of that narcotics conspiracy.

     **5.**     **May 3, 2021 Attempted Murder of Jaimie Middlebrook and Milton Lloyd**

At any trial in this case, the Government would also have introduced evidence of

shootings and other acts of violence in which Donnell Allick was involved.  For example,

on May 3, 2021, at approximately 11:47 pm, NHPD officers responded to a call for a

person shot at 260 Forbes Avenue in New Haven—which is near, but not a part of Exit 8

territory.  Upon arrival, officers observed that Jaimie Middlebrook and Milton Lloyd

(both associated with the G gang) had been shot.  Middlebrook appeared to have

relatively minor wounds on his buttocks and one of his fingers.  Lloyd, who was sitting in

the driver's seat, was covered in vomit and appeared to be critically injured with a

gunshot wound to the head.  The victims had been shot near the intersection of Brown

Place and Forbes Avenue, having just exited the Forbes Best Fuel gas station located at

401 Forbes Avenue.  The vehicle they had been sitting in sustained over half a dozen

bullet holes throughout its exterior.  Six .45 caliber fired cartridge casings were recovered

in and around the intersection of Forbes Avenue and Brown Place.

Video surveillance footage indicated that the shooters' SUV was consistent with

an Acura MDX, based on certain details of the car visible in the video.  Witness testimony

and social media evidence established that Allick was driving a dark colored Acura MDX,

9

that belonged to Terry Portee (Allick's cousin) at the time period of the shooting. Cell phone toll records show that Allick and Portee were in contact shortly before and after the shooting. Codefendant Jaedyn Rivera and Allick were also in contact during this time period and Rivera took credit for the shooting over Snapchat with an opposition gang member. Rivera and Douglas also texted about this shooting approximately twelve hours after it occurred. Allick has not admitted his involvement in this attempted murder.

### 6.    September 16, 2022 Murder of Kenneth Cloud

Allick did, however, take responsibility for the September 16, 2022 murder of Kenneth Cloud. On that date at approximately 8:54 p.m., NHPD patrol officers were dispatched to 244 Atwater Street for the report of gunfire. The first 911 caller reported hearing twelve to fourteen gunshots in the area of Atwater Street and Dover Street. Two additional 911 callers reported a person shot at 244 Atwater Street.

**Officers found forty-two nine millimeter fired cartridge casings and eight projectiles at the scene.** The below picture from Google makes clear how completely residential the area is:



The front door of the first-floor apartment of 244 Atwater (a two-story multi-family residence) was struck by gunfire seven times, and, inside the apartment, officers located

one projectile behind the front door, one projectile in the kitchen, and three bullet holes that had struck items inside the living room.  A Honda Accord parked nearby had been struck once in the rear driver's side door.  Also found at the scene near the shell casings was an Audi-branded Fusebox cover.



Witnesses would testify that a black Audi sedan parked near the residence, and someone got out of the car and said not to move, and then there were multiple gunshots.  Ring doorbell footage from a residence near where Cloud was shot shows a black sedan fleeing the area at the time of the shooting.









Kenneth Cloud was unresponsive with one gunshot wound to his back when investigators arrived. He was the father of Allick's girlfriend at the time (Kenasia Cloud). Kenneth Cloud was transported to the hospital, where medical staff confirmed that a projectile was lodged into his spine. Cloud was paralyzed from the neck down and ultimately passed away from his injuries on December 19, 2022. The medical examiner would testify that he was killed by gunshot wound.

Witnesses would further explain that Kenneth Cloud and another identified individual robbed Donall Allick of his and Samuel Douglas' drug proceeds, which were stored in a safe in Allick's girlfriend's house. Having been disrespected by having his drug money stolen from him, Allick could not let the robbery go unpunished and went to kill Cloud with another individual. Cell site location information shows Allick's cellphone traveling to Atwater Street and then being present at Atwater Street at the time of the shooting before heading back to Exit 8 territory.

### 7. October 24, 2022 Search

Significant evidence recovered during search warrants executed at Allick's residence on October 24, 2022, in connection with the separate narcotics and firearms investigation described above, also connect Allick to this incident. Specifically, in Allick's bedroom, agents found an Audi key fob that matched an Audi parked outside the residence at the time of the search. Agents had a warrant to search the Audi for narcotics-related evidence. When they opened the trunk of the Audi, a 9mm shell casing fell out. Officers stopped the search and sought an expanded warrant to cover firearms-related evidence. In addition, the Audi was missing a fuse panel cover. As noted above, a fuse panel cover of the same size/shape was found on the road outside of 244 Atwater Street at the time of the shooting.

- In addition to the other evidence recovered from the Audi, the search also revealed that a fuse panel cover located on the passenger side of the dashboard, not visible or accessible with the door closed, was missing from the vehicle.
- This missing cover matches what was found at the shooting scene.

During the execution of that search warrant, agents also seized three firearms, including a Glock 17 9mm handgun with a 33-round extended magazine, from inside Allick's residence and a Glock 26 9mm firearm with a 31-round extended magazine from another car. Ballistics analysis revealed that the Glock 17 and the Glock 26 both likely fired 9mm casings that were found on the scene at 244 Atwater Street and a DNA expert is expected to testify that Allick's DNA was linked to the grip and handle of the Glock 26 at a rate of 100 billion times more likely than unknown individuals. Each of the firearms is also linked to additional shootings in Connecticut.



Allick's DNA profile also matched DNA evidence found in the Audi.

14

1. #002-001 (Swabs - "steering wheel")
The results are consistent with the DNA profile from item #002-001 being a mixture of four contributors with at least one of them being male. Assuming four contributors, the DNA profile from item #002-001 is at least 100 billion times more likely to occur if it originated from D. Allick and three unknown individuals than if it originated from four unknown individuals.[1]

2. #003-001 (Swabs - "gear shifter")
The results are consistent with the DNA profile from item #003-001 being a mixture of four contributors with at least one of them being male. Assuming four contributors, the DNA profile from item #003-001 is at least 100 billion times more likely to occur if it originated from D. Allick and three unknown individuals than if it originated from four unknown individuals.[1]

4. #005-001 (Swabs - "driver interior door handle")
The results are consistent with the DNA profile from item #005-001 being a mixture of three contributors with at least one of them being male. Assuming three contributors, the DNA profile from item #005-001 is at least 100 billion times more likely to occur if it originated from D. Allick and two unknown individuals than if it originated from three unknown individuals.[1]

Finally, Allick waived his *Miranda* rights following the state search warrants and agreed to speak with law enforcement.  During the interview, which was video recorded, he took responsibility for all four firearms found and told officers approximately how and when he acquired each firearm, among other statements.

### 8.    Victim Impact

The Government has informed all of the victims of this proceeding. In  a remarkable display of grace, Louise Cloud, the victim's mother submitted the following victim impact statement.

USAO Number: 2023R00142
Court Docket Number: 23-CR-00056

Insert the impact of the crime here (or, if a separate victim impact form is attached, please use that form to
describe the impact of the crime):

> I want Donelle Allick to get his life together. I want him to make something out of his time. I want him to know that I don't have any ill feelings. I will pray for him. I know that kenny had his problems, so I know that Donnelle has a chance to change.
>
> MS Cloud

Although all of the victims have been notified, they have not yet decided if any will attend

sentencing.  The Government is not seeking restitution for any funeral or other expenses

connected with this sentencing.

## II.  LEGAL FRAMEWORK

Following the Supreme Court's holding in *United States v. Booker*, 543 U.S. 220, 243-45

(2005), which rendered the Sentencing Guidelines advisory rather than mandatory, a sentencing

judge is required to: "(1) calculate[] the relevant Guidelines range, including any applicable

departure under the Guidelines system; (2) consider[] the Guidelines range, along with the other

§ 3553(a) factors; and (3) impose[] a reasonable sentence." *United States v. Fernandez*, 443 F.3d

19, 26 (2d Cir. 2006). The § 3553(a) factors include: (1) "the nature and circumstances of the

offense and history and characteristics of the defendant;" (2) the need for the sentence to serve

various goals of the criminal justice system, including (a) "to reflect the seriousness of the offense,

to promote respect for the law, and to provide just punishment," (b) to accomplish specific and

general deterrence, (c) to protect the public from the defendant, and (d) "to provide the defendant

with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;" (3) the kinds of sentences available; (4) the sentencing range set forth in the guidelines; (5) policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to victims. *See* 18 U.S.C. § 3553(a).

The Second Circuit reviews a sentence for reasonableness. *United States v. Canova*, 412 F.3d 331, 350 (2d Cir. 2005). The reasonableness standard is deferential and focuses "primarily on the sentencing court's compliance with its statutory obligation to consider the factors detailed in 18 U.S.C. § 3553(a)." *Id.*

## III.    <u>DISCUSSION</u>

As this Court has heard the Government argue repeatedly at prior sentencings, through his participation in the Exit 8 gang, Donell Allick, Jr. and his coconspirators wreaked havoc on an entire city. Allick was young, but not nearly as young as many of the other defendants in this case and his crime was incredibly serious.

### A.    **The Nature and Seriousness of the Offense**

Allick was involved in large scale drug trafficking; he maintained and was convicted of possessing multiple firearms; he attempted to kill rival gang members; and he killed and aided and abetting in the killing of another person who was shot outside of his home. The motive for the murder appears to be nothing more than Allick had money stolen from him and refusing to go through the police or ask for assistance from other law enforcement, he took matters into his own hands. Kenneth Cloud did not deserve to be shot outside of his house and his family did not deserve to live the trauma of his murder and have to watch him die. This brazen murder— with forty-two bullets fired in a residential area—underscores the total disregard for the lives of others that Allick and his codefendants showed when exacting their own misbegotten code of vengeance.

### B.    History and Characteristics

This is also not Allick's first conviction.  Leaving aside his other federal conviction, which is related to the conduct here, Allick has a not insignificant record for someone of his age. Moreover, he has a record marked by violence and guns.  On September 15, 2016, he was convicted of assault after shooting rival gang members and was reported to have bragged about it—telling a witness that he had "touched" the victim and "I think I scored" —in other words, Allick believed he had shot his target.  *See* PSR ¶ 85.  He also has an escape charge from 2018, which was after he jumped out of a first-floor window to avoid his parole officer, *see* PSR ¶ 86 and then he has the related federal charges here, *see* PSR ¶ 87.  It is worth noting that the longest consecutive period of incarceration that he has served before these cases was fourteen months and sixteen days.  *See* PSR ¶ 94.

On the other hand, Allick also has incredibly tragic history. His father was murdered when he was twelve years old and was shot through the window of the apartment he was living in at the time as part of another gang related killing involving the Redside Guerilla Brims—also prosecuted federally by this Office.  Recognizing the vulnerable situation that Allick found himself in after the murder of his father, the NHPD and U.S. Attorney's Office employed considerable resources to try to keep him away from trouble.  Unfortunately, Allick continued the terrible cycle of violence that had destroyed his family by attempting to kill and killing others.  He knew personally what it did to someone to lose a father and yet he took the life of his girlfriend's father.  It is for that crime and his perpetuation of violence through and with the gang that he must be punished.

### C.    Promote Respect for the Law and Provide Just Punishment

As the Government has previously brought to the Court's attention, a 2017 Research Report by the Urban Institute found that additional gunshots in the cities studied could be directly associated with fewer jobs, fewer businesses opening, and more businesses closing.  *See* Yasemin

Irvin-Erickson, *et al.*, *A Neighborhood-Level Analysis of the Economic Impact of Gun Violence* (Urban Inst. June 2017), available at https://www.urban.org/sites/default/files/publication/90671/eigv_final_report_3.pdf (last visited March 8, 2025). Similarly, a study published in November 2018 found that standardized test scores for English Language Arts and math were approximately *50 percent lower* in the elementary schools located in areas with higher levels of gunshots. *See* Dessa Bergen-Cico, *et al.*, *Community Gun Violence as a Social Determinant of Elementary School Achievement*, 33 Soc. Work in Pub. Health 439 (Issues 7-8) (2018), available at https://www.researchgate.net/publication/328944040_Community_Gun_Violence_as_a_Social_Determinant_of_Elementary_School_Achievement (last visited March 8, 2025). This case and the amount of violence for which the defendants were responsible had significant repercussions on their communities. In order to give other children a chance, those who make communities unsafe to live in must be punished and incarcerated for some significant period of time so that the community can heal.

### D.    Need to Accomplish Specific and General Deterrence

Engaging for years in a violent street gang even after previously serving time in prison for a state assault and then not only shooting—but actually killing another person—are extraordinarily serious offenses. Allick has previously shot people and has not been deterred. He has repeatedly attempted to flee from law enforcement when they have arrived to execute arrest warrants. Unfortunately, even while incarcerated at Wyatt, Allick has accrued numerous disciplinary tickets and as indicated in the PSR has displayed disrespect towards staff members. *See* PSR ¶ 7. It can be hoped that Allick is sufficiently deterred and remorseful, but the period of incarceration to which he is sentenced should reflect the seriousness of his offense conduct, but also consider how best to

deter any future criminality.  General deterrence is also a factor that the Court should consider especially in a case like this one with a number of defendants and one that has received significant attention.

### E.  The Need to Protect the Public

Finally, the need to protect the public weighs heavily in favor of a lengthy sentence. During the ongoing gang war in which Exit 8 members were eager participants, the cities of Connecticut endured the worst violence seen in decades. Gun violence has been increasing across the country in recent years. *See* John Gramlich, *What the data says about gun deaths in the U.S.* (Pew Research, Feb. 3, 2022), available at https://www.pewresearch.org/fact-tank/2022/02/03/what-the-data-says-about-gun-deaths-in-the-u-s/ ("The 45,222 total gun deaths in 2020 were by far the most on record, representing a 14% increase from the year before, a 25% increase from five years earlier and a 43% increase from a decade prior.") (last visited July 27, 2024).  In the cities of New Haven, Waterbury, Hartford, and Bridgeport, there were a total of *eighty* homicides committed with firearms in 2021. There are some good signs that Allick will try to change his life around, but unfortunately he has not shown the willingness or ability to do so while not incarcerated yet.  Until he has fully learned that he can never use firearms, the public needs to be protected.

### F.  Special Conditions of Supervised Release

 The Government agrees with the proposed special conditions of supervised release set forth in the PSR at paragraph 149.  All are connected to the defendant and his personal history. The mental health and substance abuse programs are tied to his own disclosed history in the PSR and the search condition is reasonable in light of his arrest history and the fact that he has been found with guns and drugs.

IV.     **<u>CONCLUSION</u>**

For the foregoing reasons, a sentence of at least 264 months to run concurrently with his

other federal sentence is minimally necessary to achieve the purposes of sentencing.

<div style="margin-left: 40%">

Respectfully submitted,

MARC H. SILVERMAN
ACTING UNITED STATES ATTORNEY

*/s/ Jocelyn Courtney Kaoutzanis*

JOCELYN COURTNEY KAOUTZANIS
Fed. Bar No. CT30426
ASSISTANT U.S. ATTORNEY
U.S. Attorney's Office
157 Church Street
New Haven, CT 06510
(203) 821-3700

</div>

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that on March 8, 2025, a copy of the foregoing was filed electronically, by facsimile and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Jocelyn Courtney Kaoutzanis*

JOCELYN COURTNEY KAOUTZANIS
ASSISTANT U.S. ATTORNEY